**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 14–cv–00151–RM

A.B., by his mother and next friend, JENNIFER YBARRA,

Plaintiff,

v.

THE CITY OF WOODLAND PARK, a Colorado municipal corporation,
CHRISTOPHER MOELLER, in his individual and official capacities,
ANDREW LEIBBRAND, in his individual and official capacities,
WAL-MART STORES, INC., a Delaware corporation,
MELISSA YOUNG, and
SETH SHELTON,

Defendants.

---

**ORDER ON WOODLAND PARK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 69) AND MOTION PURSUANT TO FEDERAL RULE OF EVIDENCE 702 (ECF NO. 59)**

---

This action arises from the fatal shooting of Plaintiff's father, Craig Bondo, after he resisted arrest for driving a stolen vehicle. The matter is before the Court on the City of Woodland Park, Christopher Moeller, and Andrew Liebbrand's (collectively, the "Woodland Park Defendants") Motion for Summary Judgment (the "Motion") (ECF No. 69) filed pursuant to Fed. R. Civ. P. 56. Upon consideration of the Motion, Plaintiff's Response (ECF No. 83), the Woodland Park Defendant's Reply (ECF No. 90), the Court file, and the applicable statutes, rules and case law, and being otherwise fully advised, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I. STANDARD OF REVIEW

### A. General

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Robertson v. Bd. of Cty. Comm'rs of the Cty. of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citation omitted). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a

genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."[1] Fed. R. Civ. P. 56(e). "[C]onclusory, self-serving, and generalized denials" are insufficient to defeat summary judgment. *Sartori v. Susan C. Little & Associates, P.A.*, 571 F. App'x 677, 680 (10th Cir. 2014).

**B. Qualified Immunity**

When a defendant asserts a qualified immunity defense, the plaintiff initially bears the "heavy two-part burden" of showing that the defendant's actions violated (1) a constitutional or statutory right that, (2) was clearly established at the time of the conduct at issue. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). If the plaintiff does not carry his burden, the defendant prevails. *Reynolds,* 370 F.3d at 1030. The district courts may exercise their sound discretion in deciding which of the two-part inquiry should be addressed first in light of the circumstances of the case. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). In

[1] As the Woodland Park Defendants pointed out, Plaintiff offers a number of "facts" for which no support or admissible evidence was provided. Nonetheless, a number of such "facts" are undisputed by the Woodland Park Defendants. Therefore, to the extent any of such undisputed facts are material to the resolution of the Motion, the Court will consider them.

determining whether the right was clearly established, the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Pearson*, 555 U.S. at 244.

## II. FACTUAL BACKGROUND

On January 22, 2013, Defendant Christopher Moeller, a police officer of Defendant City of Woodland Park, drove his patrol car to Defendant Wal-Mart's Woodland Park store on a personal errand, but he was on duty and wearing his uniform. While in the store, Wal-Mart personnel contacted him claiming there was a male shoplifting suspect in the store. Defendants Seth Shelton and Melissa Young, Wal-Mart employees, initially told Officer Moeller that they suspected a prior shoplifter was in the store. Subsequently, Ms. Young[2] told Officer Moeller that the suspect – Mr. Bondo – was not the prior shoplifting suspect. The prior shoplifting suspect and Mr. Bondo were both Hispanic males.

Nonetheless, Wal-Mart personnel told Officer Moeller they were keeping an eye on the suspect because he had high dollar merchandise in the bottom of his cart, covered up by low dollar items. Officer Moeller remained in the store to monitor the situation and observed the male suspect with his cart as indicated by the Wal-Mart personnel. The suspect abandoned his full cart near the front checkout stands and exited the store without purchasing anything. As the suspect exited, he told Mr. Shelton that he (Mr. Bondo) forgot this wallet in his vehicle.

The suspect did not return to the store with his wallet. Instead, he got into a light blue Saturn station wagon and left the Wal-Mart parking lot. Based on these events, Officer Moeller suspected the suspect of having committed attempted retail theft. Officer Moeller said he would

[2] The record is insufficient as to whether Mr. Shelton also did so, but that is not material.

contact the driver to tell him he was no longer welcome at the Wal-Mart store and, if he returned, he would be charged with trespassing.[3] Mr. Shelton knew Officer Moeller intended to conduct a traffic stop of Mr. Bondo. Officer Moeller contacted Defendant Andrew Liebbrand, another police officer, and asked him to make a traffic stop and conduct a field interview of the driver, as he suspected the driver had attempted to shoplift from Wal-Mart.

Officer Leibbrand commenced the traffic stop at Officer Moeller's request, pulled Mr. Bondo over a short distance from Wal-Mart and asked Mr. Bondo for his license and registration. Officer Moeller went to the scene of the stop and joined Officer Liebbrand. Mr. Bondo provided a vehicle registration card that did not match the temporary registration tag displayed in the back window of the vehicle, which was registered to a red 2003 Jeep. Upon running the vehicle's (the Saturn) information through dispatch, the vehicle came back as being reported stolen. The Officers prepared to arrest Mr. Bondo for operating a stolen vehicle, but that decision had nothing to do with Mr. Bondo's race.

Officer Moeller approached the driver side door to initiate the arrest. As Officer Moeller reached for the door handle, he asked Mr. Bondo to turn the vehicle off and to step out of the vehicle. Mr. Bondo pulled the door closed and it locked. Officer Moeller reached into the vehicle through the partially rolled down front driver side window, and he and Mr. Bondo struggled for control of the door. Officer Moeller yelled repeatedly at Mr. Bondo to turn the vehicle off. There was nothing in front of Mr. Bondo's vehicle, so he could have taken off straight ahead. Instead, Mr. Bondo turned the steering wheel hard to the right and reached for the gear shifter.

---

[3] Whether the Wal-Mart Defendants "authorized" Officer Moeller to do so is disputed but, for purposes of the Motion, immaterial.

The evidence presented creates a factual dispute as to what exactly occurred thereafter which lead up to Officer Moeller shooting Mr. Bondo. Officer Moeller testified that the vehicle reversed and hit him, he became off balanced, and he ended up positioned at the left front fender of Mr. Bondo's vehicle. Plaintiff disputes – but offered no evidence in support of such dispute – whether the vehicle reversed and hit Officer Moeller. Plaintiff does not dispute that Officer Moeller ended up at the left front of the vehicle. Similarly, Officer Moeller and Mr. Bondo were both wearing sunglasses, and what Officer Moeller could not or could not see is disputed. Officer Moeller's affidavit stated Mr. Bondo looked directly at him and revved his engine while maintaining eye contact. Officer Moeller's deposition testimony, however, was that he could not see Mr. Bondo's eyes, but Mr. Bondo's head was pointed toward Officer Moeller. Officer Moeller stated Mr. Bondo drove at him, causing Officer Moeller to fear for his life and to fire at the moving vehicle. Mr. Shelton, who was watching what was unfolding, testified that it appeared the driver was going directly into Officer Moeller, but did not recall if Officer Moeller got out of the way. Mr. Shelton did not specifically see the car turn to avoid Officer Moeller.

It is undisputed that within moments of being positioned at the left front of Mr. Bondo's vehicle, Officer Moeller fired nine shots at the vehicle, with the first three shots hitting the front driver's side window from left to right. It is also undisputed is that, within fractions of seconds of the firing of the first nine shots, Officer Moeller fired two shots into the back of the vehicle. Whether the evidence supports that Mr. Bondo was attempting to back the vehicle into Officer Moeller, causing Officer Moeller to fire those shots, however, is disputed. On the one hand, Officer Moeller stated that from the left front of the vehicle he fired moving to his right and ended up at the back of the vehicle, when the reverse lights came on and the vehicle revved and moved back and forth. Officer Moeller stated that he fired, fearing the vehicle would reverse into him.

On the other hand, Officer Liebbrand testified that he did not see the vehicle back up at any time. He did, however, look away for a moment. Similarly, Ms. Young and Mr. Shelton did not see the vehicle go into reverse or backwards. One or more of Officer Moeller's shots killed Mr. Bondo.

Plaintiff is Mr. Bondo's minor son. At the time of the incident, neither Officer had any knowledge that Mr. Bondo had a minor child, Plaintiff. And, neither Officer intended to interfere with Plaintiff's relationship with Mr. Bondo.

Plaintiff's mother is Jennifer Ybarra. On January 14, 2014, Plaintiff, by his mother and next friend, filed this action against Defendants. Neither A.B. nor Ms. Ybarra is the personal representative of Mr. Bondo's Estate.

## III. ANALYSIS

### A. Overview

As a result of Mr. Bondo's death, Plaintiff brought this action against the Woodland Park Defendants as well as the Wal-Mart Defendants (Wal-Mart, Mr. Shelton, and Ms. Young) (collectively, the "Defendants"). As against the Woodland Park Defendants, Plaintiff's Complaint contains the following claims: (1) First Claim for Relief against the Officers – deprivation of rights under the Fourth Amendment, filed pursuant to 42 U.S.C. § 1983; (2) Second Claim for Relief against the City – deprivation of rights under the Fourth Amendment, filed pursuant to 42 U.S.C. § 1983; (3) Third Claim for Relief against Officer Moeller – excessive force under the Fourth Amendment, filed pursuant to 42 U.S.C. § 1983; (4) Fourth Claim for Relief against the City – excessive force under the Fourth Amendment, filed pursuant to 42 U.S.C. § 1983; (5) Fifth Claim for Relief against all Defendants – conspiracy to interfere with civil rights, filed pursuant to 42 U.S.C. § 1985; (6) Sixth Claim for Relief against all Defendants – wrongful

death, filed pursuant to C.R.S. § 13-21-202; (7) Seventh Claim for Relief against Officer Moeller – battery; and (8) Eighth Claim for Relief against the City – based on respondeat superior.

The Woodland Park Defendants seek dismissal of the claims, arguing: (1) Plaintiff lacks standing to sue on the survival claims (First through Fourth and Seventh Claims for Relief); (2) Defendants did not intend to interfere with Plaintiff's relationship with Mr. Bondo (First through Fourth Claims); (3) qualified immunity on Plaintiff's Fourth Amendment Claims against the Officers (First and Third Claims); (4) no unconstitutional policy or custom, or failure to train (Second and Fourth Claims); (5) no willful or wanton conduct to support wrongful death and such claim is barred by the Colorado Governmental Immunity Act ("CGIA") (Sixth Claim); and (6) no evidence of racial or other class-based discriminatory conspiracy (Fifth Claim). Their Motion does not address the Eighth Claim directed against the City based on respondeat superior. Nonetheless, the parties' briefs appear to argue as if all claims were addressed and this claim does not exist. Similarly, in the Final Pretrial Order, Plaintiff provided that his complaint "states causes of action for deprivation of rights and excessive use of force under § 1983, conspiracy under § 1985, wrongful death under state law, battery and negligence." (ECF No. 101, page 2.) Notably absent is any mention of a claim for respondeat superior. As "the pretrial order measures the dimensions of the lawsuit, both in the trial court and on appeal," *Salazar v. Commerce City*, 535 F. App'x 692, 694-695 (10th Cir. 2013) (unpublished) (internal alterations omitted), the Court finds this claim has been abandoned.[4]

[4] Although the Final Pretrial Order was entered after the Motion for Summary Judgment was filed, the Court finds this does not necessitate a different result.

**B. Plaintiff's Standing to Sue – First through Fourth and Seventh Claims for Relief**

The Woodland Park Defendants argue the survival action may only be brought by the personal representative of the decedent's estate; therefor, Plaintiff lacks standing to sue.[5] The Court agrees.

Pursuant to C.R.S. § 13-20-101, Colorado's survival statute, "[a]ll causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person…." Such actions are brought for the benefit of the decedent's estate. *Espinoza v. O'Dell*, 633 P.2d 455, 462-3 (Colo. 1981).

Plaintiff's claims for violations of the Fourth Amendment and battery are brought pursuant to Colorado's survival statute. *See Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1506-07 (10th Cir. 1990) (remedy in § 1983 death cases is a survival action, brought by the estate of the deceased victim); *Teufel v. U.S.*, 5 F.3d 547, 1993 WL 345530, at * 2, (10th Cir. 1993) (Table) (unpublished); *Wilson ex rel. Wilson v. City of Lafayette*, No. 07-cv-01844-PAB-KLM, 2010 WL 1380253, at *3 (10th Cir. March 31, 2010) (unpublished). As such, under Colorado law, these claims can be brought only by the personal representative of the estate of the deceased, *i.e.,* by the personal representative of the estate of Mr. Bondo. *Berry, supra*; *Teufel, supra*; *Reighley v. Int'l Playtex, Inc.*, 604 F. Supp. 1078, 1080 (D. Colo. 1985) (survival claims for outrageous conduct and negligent infliction of emotional distress may only be brought by personal representative). Children or heirs of the deceased do not have standing to bring survival actions. *Reighley, supra*. Neither Plaintiff nor his mother, Jennifer Ybarra, however, is the personal representative of Mr. Bondo's estate. Accordingly, Plaintiff's claims for violations of Mr. Bondo's rights under the Fourth Amendment and for battery are dismissed for lack of standing.

---

5 The parties referred to the issue as one of standing; therefore, the Court assumes, without deciding, that it is so.

Plaintiff impliedly admits[6] he lacks standing but argues dismissal is not warranted as the "technical standing issue" may be cured by the appointment of Ms. Ybarra as special administrator for Mr. Bondo's estate. Plaintiff argues Ms. Ybarra has three years to do so, and the Court may allow an amendment to reflect this appointment, which would relate back to the filing of the complaint. Even, assuming, *arguendo*, Ms. Ybarra had the ability to do so for three years, that time has now run. Mr. Bondo was killed on January 22, 2013, and it is now March 29, 2016. Ms. Ybarra's "expected appointment" "prior to trial" is therefore moot. Moreover, even assuming the validity of Plaintiff's argument that nothing more than an amendment is required, Plaintiff presupposes the Court would grant a very belated request (still unmade) to add or change parties on an issue long known but ignored by Plaintiff and his mother; an assumption which Plaintiff cannot now test.[7] Accordingly, dismissal is warranted on Plaintiff's First through Fourth and Seventh Claims for relief.

**C. Plaintiff's § 1983 Civil Rights Claims – First through Fourth Claims**

In addition to arguing lack of standing, the Woodland Park Defendants appear to argue the § 1983 claims fail because they violated none of Plaintiff's – as opposed to Mr. Bondo's – constitutional rights. In response, Plaintiff contends the Woodland Park Defendants' argument may be resolved by Ms. Ybarra seeking appointment as special administrator to maintain the claims on behalf of Mr. Bondo's estate. Plaintiff's argument misses the mark.

A civil rights claim must be based on the violation of a plaintiff's personal rights, and not the rights of someone else. *Teufel,* 1993 WL 345530, at *2. Thus, where a plaintiff alleges, or

[6] Plaintiff disputes the fact that neither he nor Ms. Ybarra is the personal representative, relying on his bare denial. Such denial is insufficient, *Sartori*, 571 F. App'x at 680, and contradicted by the undisputed evidence.

[7] In *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1122 (D. Colo. 2000), the court found the issue was one of capacity, thereby allowing a party's amendment to relate back to the original filing. In *Reighley, supra*, the court stated the children lacked standing, but the question of whether the matter was one of standing or capacity was not raised. As Plaintiff's analysis fails even under his three-years-to-appoint-and-then-amend argument, this Court need not reach this issue.

the evidence shows, an intent to violate the decedent's/victim's rights, that intent may not be transferred to establish intent to deprive a plaintiff of his constitutional rights. *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985). However, an independent, nonderivative constitutional claim exists in favor of family members if – and "only if the defendant's impermissible conduct was deliberately directed at, and adversely affected, the plaintiff's protected relationship with the victim." *Teufel*, 1993 WL 345530, at *2. The focus is on a defendant's alleged intent.

In this case, Plaintiff's § 1983 claims all allege the deprivation of Mr. Bondo's rights. There are no allegations – or evidence – that the Woodland Park Defendants intended to deprive Plaintiff of his relationship with Mr. Bondo or of his constitutional rights. In fact, the Woodland Park Defendants had no knowledge of Plaintiff's existence. Accordingly, to the extent that Plaintiff is attempting to assert a constitutional claim on his own behalf in the First through Fourth Claims for relief, such claim fails.[8] And, as to such a claim, it matters not whether Ms. Ybarra is the personal representative of Mr. Bondo's estate.

**D. Qualified Immunity – First and Third Claims for Relief under § 1983**

The Court has already determined Plaintiff lacks standing to sue for any survival claim and fails to provide any evidence that would support an independent, non-derivative claim under § 1983. Accordingly, the Court need not determine if the First and Third Claims are also subject to dismissal against the Officers based on qualified immunity.

---

[8] The Court does not read the Complaint to allege such a claim, and Plaintiff's argument in response that an application for special appointment to act on behalf of Mr. Bondo's estate supports that such a claim was not raised.

**E. Municipal Liability – Second and Fourth Claims for Relief under § 1983**

For the reasons stated in Section D above, the Court need not decide whether the City is not subject to municipal liability.

**F. Wrongful Death – Sixth Claim for Relief**

The Woodland Park Defendants seek dismissal of this claim based on the Colorado Governmental Immunity Act ("CGIA"). The Court agrees, but only as to the City and Officer Liebbrand.

An action for wrongful death in Colorado is "'classified as a property tort action.'" *Jones v. Hildebrant*, 432 U.S. 183, 185 (1977) (quoting *Fish v. Liley,* 120 Colo. 156, 163, 208 P.2d 930, 933 (1949)); *see Cossio v. City and County of Denver*, 986 F. Supp. 1340, 1349 (D. Colo. 1997). Under the CGIA, "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." C.R.S. § 24-10-106(1). The specific exceptions enumerated – such as the operation of certain public entity vehicles by a public employee or the operation of a public hospital or correctional facility – are inapplicable here. Accordingly, Plaintiff's claim for wrongful death against the City – a public entity – is barred.[9]

As against public employees, however, with exceptions not applicable here, they are immune from liability for claims "which lie[] in tort or could lie in tort …which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton." C.R.S. § 24-10-118(2)(a). "[T]o be willful and wanton, public employees must be consciously

[9] Plaintiff did not respond to the Woodland Park Defendants' argument concerning the City.

aware that their acts or omissions create a danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk." *Gray v. Univ. of Colo. Hosp. Authority*, 284 P.3d 191, 198 (Colo. App. 2012). It is "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Moody v. Ungerer,* 885 P.2d 200, 205 (Colo. 1994) (citing C.R.S. § 13-21-102(1)(b), the exemplary damages statute, and other sources in evaluating whether conduct was willful and wanton under the CGIA). Although whether a defendant's actions are willful and wanton is generally a question of fact, *U.S. Fire Ins. Co. v. Sonitrol Mgmt Corp.*, 192 P.3d 543, 549 (Colo. App. 2008), if the record is devoid of sufficient evidence to raise a factual issue, the question may be resolved as a matter of law. *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App. 1996). At issue here is whether – as a matter of law – neither Officer's actions were "willful and wanton."

The Woodland Park Defendants argue there are neither allegations nor evidence to demonstrate the Officers acted heedlessly and recklessly, without regard to the consequences or the rights and safety of Mr. Bondo. Plaintiff, on the other hand, asserts willful and wanton conduct is inherent in Officer Moeller's "fictional account of the facts," but makes no assertions as to Officer Liebbrand's conduct. The parties fail to differentiate the Officers, but the Court finds differentiation is required.

Starting with Officer Liebbrand, viewing the evidence in a light most favorable to Plaintiff, the evidence neither supports nor permits an inference that Officer Liebbrand's actions were willful or wanton. Here, Officer Liebbrand was not in the Wal-Mart store. It was only upon the request of Officer Moeller that Officer Liebbrand responded to a potential attempted shoplifting at Wal-Mart and stopped Mr. Bondo after he left Wal-Mart. Officer Leibbrand stopped Mr. Bondo

but there is no evidence that he engaged in any conduct that was willful or wanton – *i.e.*, purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of Mr. Bondo. Plaintiff does not argue otherwise.

Officer Moeller's actions are a different matter. Construing the record in a light most favorable to Plaintiff, there is sufficient evidence to create a factual issue of whether Officer Moeller fired shots into a moving vehicle which was trying to flee rather than fight. Moreover, although Officer Moeller provided an affidavit stating the vehicle reversed and hit him in the first instance, the Court is mindful that "'since the victim of deadly force is unable to testify, courts should be cautious on summary judgment to 'ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify,'" *Pauly v. White*, __ F.3d __ , 2016 WL 502830, at *16 (10th Cir. 2016) (quoting *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999)). Instead, courts should consider the circumstantial and other evidence relevant to the matter. *Id.* After considering the evidence presented, there exists genuine issues of material fact for a jury to decide whether Officer Moeller's conduct was purposeful, and committed recklessly with conscious disregard for the rights and safety of Mr. Bondo. Accordingly, summary judgment based on the CGIA is denied as to Officer Moeller on Plaintiff's claim for wrongful death.

**G. Plaintiff's Civil Conspiracy Claim under Section 1985 – Fifth Claim**

The Woodland Park Defendants argue dismissal on Plaintiff's Fifth Claim on the merits is proper because there is no evidence demonstrating an agreement among Defendants to deprive Mr. Bondo of his constitutional rights. The Court agrees.

In order to prove a private conspiracy in violation of 42 U.S.C. § 1985(3), Plaintiff must show (1) a conspiracy; (2) to deprived Mr. Bondo of equal protection or equal privileges and

immunities; (3) an act in furtherance of the conspiracy; and (4) a resulting injury or deprivation. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *Babbar v. Ebadi*, 216 F.3d 1086, 2000 WL 702428, at * 8 (10th Cir. 2000) (Table) (unpublished). The conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal quotation marks, citation, and alteration omitted). Section 1985(3) does not "reach conspiracies motivated by an economic or commercial bias." *Tilton,* 6 F.3d at 686 (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983)). "Discriminatory purpose, [the Supreme Court] said, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part because of, nor merely in spite of, its adverse effects upon an identifiable group." *Bray*, 506 U.S. at 271-2 (internal quotation marks and citation omitted). Further, the conspiracy must be "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray*, 506 U.S. at 267-8 (internal quotation marks and citation omitted); *Tilton,* 6 F.3d at 686.

In this case, the evidence is insufficient to establish there was a conspiracy among Defendants; that any conspiracy was motivated by a desire to discriminate against Mr. Bondo because of his race; or that Defendants intended to interfere with Mr. Bondo's protected rights. Here, the Wal-Mart Defendants initially singled Mr. Bondo out because of the possibility that he was a suspected shoplifter who had previously been in the Wal-Mart store. After determining Mr. Bondo was not the suspected shoplifter, the Wal-Mart Defendants continued to observe Mr. Bondo because he behaved suspiciously. Officer Moeller happened to be in the store at the time the

Wal-Mart Defendants observed this behavior, and he called Officer Leibbrand (who was never in the store) to assist.

There is insufficient evidence for a reasonable juror to conclude that the Woodland Park Defendants – singly or collectively – targeted Hispanic shoppers, or targeted Mr. Bondo because he was Hispanic. There is no evidence that Officer Liebbrand was advised of or otherwise even knew of Mr. Bondo's race before he was pulled over after he left the Wal-Mart store. Instead, the evidence presented fails to demonstrate any genuine dispute that Mr. Bondo was "targeted" because of his suspicious behavior. Discriminatory intent will not be presumed simply because Mr. Bondo – and the previous person suspected of shoplifting – was a Hispanic male. *See Snowden v. Hughes*, 321 U.S. 1, 8 (1944) (discriminatory intent not to be presumed). Accordingly, there is insufficient evidence from which a reasonable factfinder could conclude there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin,* 403 U.S. at 102, which motivated the Woodland Park Defendants' actions, much less any conspiracy among the Defendants who were so motivated. Plaintiff argues there is a dispute of fact present, but fails to identify what disputed material facts preclude a finding in favor of the Woodland Park Defendants. The Court's review finds none.

Similarly, there is insufficient evidence to support a finding of any intent to deprive Mr. Bondo of any protected right. Plaintiff's *argument* that there was an "implicit policy" between Defendants "that deprived Mr. Bondo of his right to be free from unreasonable seizure" is insufficient. Neither conclusory statements nor evidence based on nothing more than mere speculation, conjecture, or surmise is competent to defeat summary judgment. *See Rice v. United States,* 166 F.3d 1088, 1092 (10th Cir. 1999), *cert. denied*, 528 U.S. 933 (1999). Accordingly, summary judgment in favor of the Woodland Park Defendants is appropriate.

**H. Plaintiff's Negligence Claim – Ninth Claim**

In a footnote, the Woodland Park Defendants argue that, to the extent Plaintiff's negligence claim is directed against them, such claim is barred by the CGIA. Plaintiff did not respond to this argument. Nonetheless, the Court finds the claim is directed against only the Wal-Mart Defendants, and relief is sought against only them.

**I. The Remaining Claim**

Based on the Court's determinations, the only claim remaining is for "wrongful death" against Officer Moeller. A wrongful death claim has two elements: "(1) the death of a person, and (2) a wrongful act that would have entitled the person 'injured' to maintain an action, had the person survived." *Stamp v. Vail Corp.*, 172 P.3d 437, 451 (Colo. 2007) (Eid, J., concurring). The "wrongful death case does not arise from a separate tort"; instead, it is "wholly derivative of the injury to the decedent." *Steedle v. Sereff*, 167 P.3d 135, 140 (Colo. 2007). It is derivative because "it depends upon the claim that the decedent would have had if [he] had survived [his] injuries." *Stamp*, 172 P.2d at 451 (Eid, J., concurring). In this case, however, there are no claims by the decedent as the Court has found in favor of the Woodland Park Defendants as to all other claims. And the wrongful death claim has been alleged in terms which suggest that it may be based on the dismissed claims. In light of this result, the parties are ordered to brief the issue of whether the wrongful death claim survives against Officer Moeller.

**IV. CONCLUSION**

Based on the foregoing, it is **ORDERED**

(1) That the Woodland Park Defendants' Motion for Summary Judgment (ECF No. 69) is **GRANTED in part and DENIED in part** as follows:

(i) Plaintiff's First, Second, Third, Fourth, and Seventh Claims for Relief are dismissed without prejudice;

(ii) Plaintiff's Fifth Claim for Relief is dismissed with prejudice;

(iii) Plaintiff's Sixth Claim for Relief against Defendants City of Woodland Park and Andrew Leibbrand is dismissed with prejudice; and

(iv) Plaintiff's Eighth Claim is deemed abandoned;

(2) That there being no remaining claims against Defendants City of Woodland Park and Andrew Leibbrand, their names shall be removed from the caption of this action in all future filings with the Court;

(3) That Plaintiff's Sixth Claim for Relief remains against Defendant Christopher Moeller only. The parties shall brief the issue of whether this wrongful death claim remains viable in light of the dismissal of all other claims in accordance to the following schedule: (i) simultaneous opening briefs due by April 13, 2016; and (2) simultaneous response briefs due by April 27, 2016; and

(4) That in light of the dismissals ordered herein, the Motion Pursuant to Federal Rule of Evidence 702 (ECF No. 59) is **DENIED WITHOUT PREJUDICE**, with leave to refile within 21 days of the date of the order addressing the issue to be briefed in paragraph (3) above, if Defendant Christopher Moeller wishes to do so.

DATED this 29th day of March, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge