**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14–cv–00151–RM-KMT

A.B., by his mother and next friend, JENNIFER YBARRA,

    Plaintiff,

v.

THE CITY OF WOODLAND PARK, a Colorado municipal corporation,
CHRISTOPHER MOELLER, in his individual and official capacities,
ANDREW LEIBBRAND, in his individual and official capacities,
WAL-MART STORES, INC., a Delaware corporation,
MELISSA YOUNG, and
SETH SHELTON,

    Defendants.

---

**ORDER GRANTING
WAL-MART DEFNDANTS' MOTION TO DISMISS (ECF NO. 21)**

---

    This action arises from the fatal shooting of Plaintiff's father, after he left a Wal-Mart store. The matter is before the Court on Defendants Wal-Mart Stores, Inc., Melissa Young, and Seth Shelton's (collectively, the "Wal-Mart Defendants") Motion to Dismiss (the "Motion") filed pursuant to Fed. R. Civ. P. 12(b)(6). Upon consideration of the Motion, Plaintiff's Response (ECF No. 33) to the Wal-Mart Defendants' Motion, Wal-Mart Defendants' Reply in Support of Motion to Dismiss (ECF No. 34), the Court file, and the applicable statutes, rules and case law, and being otherwise fully advised, the Court grants the Motion as stated herein.

## I.   BACKGROUND

Plaintiff is the minor child of Craig Bondo ("Mr. Bondo"), who brings this action by his mother and next friend, Jennifer Ybarra, due to the death of his father. (ECF No. 1, ¶¶ 1, 2.) According to the allegations in the Complaint, this is what occurred.

On January 21, 2013, Defendant Melissa Young, Wal-Mart's loss prevention officer, called the Woodland Park Police Department ("WPPD") to make a report of shoplifting. (*Id.* at ¶¶ 8, 15.) In response to Ms. Young's call, Defendant Christopher Moeller, an officer of Defendant the City of Woodland Park, took a cold report at the Wal-Mart located in Woodland Park, Colorado about a shoplifting allegation against a Hispanic male that had occurred on or about January 17, 20, and 21, 2013. (*Id.* at ¶¶ 4, 15.)

On the next day, January 22, 2013, Officer Moeller, while on duty, went to the Wal-Mart on a personal errand. While Officer Moeller was in Wal-Mart, one of its employees contacted Officer Moeller and that employee indicated he/she had observed a Hispanic male who might be the shoplifting suspect from the prior incidents. The employee tracked Mr. Bondo down in the store and pointed him out to Officer Moeller as potentially being the Hispanic male who was suspected in the recent shoplifting incidents. (*Id.* at ¶¶ 17, 18.) Ms. Young and Defendant Seth Shelton, Wal-Mart's assistant manager, observed Mr. Bondo further and determined he was not the Hispanic male suspected of the prior shoplifting incidents. (*Id.* at ¶ 19.)

Nonetheless, Ms. Young, Ms. Shelton, and other Wal-Mart personnel continued to surveil Mr. Bondo in the store, as did Officer Moeller. (*Id.* at ¶¶ 20, 22.) While surveilling Mr. Bondo, Officer Moeller contacted Defendant Andrew Liebbrand by cell phone and asked him to take a

position near the Wal-Mart so that he could apprehend Mr. Bondo.  (*Id.* at ¶ 21.)  Officer Liebbrand did so.  (*Id.* at ¶ 21.)

Mr. Bondo left the store without attempting to commit or actually committing any crime.  (*Id.* at ¶ 22.)  Officer Moeller offered to contact Mr. Bondo and tell him he was no longer welcomed at Wal-Mart, and Mr. Shelton indicted he would like Officer Moeller to do so.  (*Id.* at ¶ 24.)  The City's "police have a custom and policy of giving notice to suspected shoplifters that s/he is no longer welcome at Wal-Mart when requested to do so by Wal-Mart personnel."  (*Id.* at ¶ 26.)  Mr. Shelton understood that Officer Moeller and perhaps other officers from the WPPD were going to use their authority to stop Mr. Bondo and threaten him with criminal charges if he returned to Wal-Mart.  (*Id.* at ¶ 25.)

Officer Leibbrand stopped Mr. Bondo outside the Wal-Mart parking lot exit.  (*Id.* at ¶ 29.)  Officer Moeller drove to the scene of the traffic stop and made contact with Mr. Bondo.  Both Officers demanded that Mr. Bondo present his identification, motor vehicle registration, and proof of insurance.  (*Id.* at ¶¶ 33, 34.)  The Officers detained Mr. Bondo for approximately ten minutes and made at least three contacts with him.  (*Id.* at ¶ 35.)  In the process, the Officers learned the motor vehicle Mr. Bondo was driving was reported stolen.  (*Id.* at ¶ 36.)

Based on the report of the stolen vehicle, the Officers decided to arrest Mr. Bondo.  (*Id.* at ¶ 37.)  Officer Moeller approached the driver's side door of Mr. Bondo's vehicle and ordered him to step out.  When Mr. Bondo did not comply, Officer Moeller attempted to open Mr. Bondo's car door.  Instead of complying with Officer Moeller's demands, Mr. Bondo closed the door Officer Moeller was attempting to open, locked the door, put the car into forward gear, and attempted to

flee. (*Id.* at ¶¶ 40, 41.) Officer Moeller was standing at the side of the vehicle and Officer Liebbrand was standing at the rear passenger side of the vehicle. (*Id.* at ¶ 42.) At no time did Mr. Bondo manifest any intent to use the vehicle as a deadly weapon. (*Id.* at ¶ 42.) While Mr. Bondo was pulling forward, Officer Moeller drew his service handgun and shot at Mr. Bondo's vehicle multiple times, hitting the vehicle on the driver's side and rear and killing Mr. Bondo. (*Id.* at ¶¶ 44, 45.)

Based on the fatal shooting of Mr. Bondo, Plaintiff filed suit against the City, the Officers, and the Wal-Mart Defendants. As against the Wal-Mart Defendants, Plaintiff asserts the following claims: (1) Fifth Claim for Relief – conspiracy to interfere with civil rights, pursuant to 42 U.S.C. § 1985; (2) Sixth Claim for Relief – wrongful death, pursuant to C.R.S. § 13-21-202; and (3) Ninth Claim for Relief – negligence. The Wal-Mart Defendants seek dismissal based on Plaintiff's failure to state any claim.

## II. STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 555 (internal citations and brackets omitted).

4

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal citation and quotation marks omitted; italics in original).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks and citation omitted). The Tenth Circuit has further noted "that [t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id*. (internal quotation marks omitted). Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'" *Id*. (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal citation and quotation marks omitted; italics in original).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks and citation omitted). The Tenth Circuit has further noted "that [t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id*. (internal quotation marks omitted). Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'" *Id*. (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir.

1998); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." *Khalik*, 671 F.3d at 1190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*.

### III. ANALYSIS

#### A. Plaintiff's Claim for Civil Conspiracy under 42 U.S.C. § 1985 – Fifth Claim

The Wal-Mart Defendants argue Plaintiff fails to state a claim for civil conspiracy under 42 U.S.C. § 1985. The Court agrees. In order to establish a conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show (1) "some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action,…and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal quotation marks, citation, and brackets omitted). *See also Washington v. Hall*, 989 F.2d 508, 1993 WL 55948, at *2 (10th Cir. 1993) (unpublished table decision). "Discriminatory purpose, [the Supreme Court] said, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker …selected or reaffirmed a particular course of action at least in part because of, nor merely in spite of, its adverse effects upon an identifiable group." *Bray*, 506 U.S. at 271-2 (internal quotation marks and citation omitted).

Plaintiff argues the Complaint: (1) alleges that the sole basis for the Wal-Mart Defendants to scrutinize Mr. Bondo was because he was a Hispanic male; and (2) infers that the Wal-Mart Defendants' continuing surveillance of Mr. Bondo, after concluding he was not the suspect from the prior shoplifting incidents, was because he was Hispanic.   A review of the Complaint, however, shows no such allegations or inferences.   Instead, Plaintiff alleges as follows:

(1) Wal-Mart reported shoplifting by a Hispanic male over a three-day period prior to January 22, 2013 (ECF No. 1, ¶ 15);

(2) On January 22, 2013, Wal-Mart employee(s) misidentified Mr. Bondo – a Hispanic male – as potentially being the Hispanic male suspected of the prior shoplifting incidents (*id.* at ¶ 18);

(3) The Wal-Mart employees determined Mr. Bondo was not the suspect, but continued surveilling him nonetheless (*id.* at ¶¶ 19, 20);

(4) The City's "police have a custom and policy of giving notice to suspected shoplifters that s/he is no longer welcome at Wal-Mart when requested to do so by Wal-Mart personnel."   (*Id.* at ¶ 26.);

(5) "The City has a custom and practice that authorizes its police officers to stop and detain persons when asked by local retailers, including Walmart, so that the officer can notify the person that s/he is unwelcome at the retailer and threaten criminal trespassing charges should the person return."   (*Id.* at ¶ 66.);

(6) "All the Defendants to this action conspired in the custom and practice of having a City police officer stop and detain a person selected by Walmart personnel to notify the

      person that s/he is unwelcome at Walmart and cannot return to Walmart under threat of criminal trespassing charges." (*Id.* at ¶ 86.); and

(7) "In furtherance of the conspiracy, Young, Shelton or both pointed out Father [Mr. Bondo] to Ofc. Moeller as the Hispanic male shoplifting suspect from the prior incidents, surveilled Father, and requested that Ofc. Moeller stop and detain him under the custom and practice agreed to by the City and Walmart." (*Id.* at ¶ 89.)

Such allegations are insufficient to state a § 1985 claim against the Wal-Mart Defendants.

      First, contrary to Plaintiff's argument, there are no factual allegations to support some racial, or otherwise class-based, invidious discriminatory animus behind the Wal-Mart Defendants' alleged actions toward Mr. Bondo. Instead, the Complaint alleges a custom and practice by Defendants of targeting "*suspected shoplifters*" – a non-protected class. The allegations that Mr. Bondo is a Hispanic male, and the prior suspected shoplifter was a Hispanic male, are insufficient to convert – or extend – the allegations into an intent to target Hispanic males. *See Snowden v. Hughes*, 321 U.S. 1, 8 (1944) ("[A] discriminatory purpose is not presumed[.]").

      Next, a § 1985 action requires an *intent* to deprive persons of a right guaranteed against private impairment. "[I]t does not suffice for application of § 1985(3) that a protected right [was] incidentally affected." *Bray*, 506 U.S. at 275. Here, the Complaint alleges that "[a] likely and proximate consequence of the Defendants' custom and practice was that the stop and detention may deprive a person of his or her rights." (ECF No. 1, ¶ 87.) And that, "[i]n following the agreed custom and practice to stop and detain Father, the Defendants conspired to deprive Father,

either directly or indirectly, of the equal protection of the laws under the Fourteenth Amendment." (*Id.* at ¶ 90.) Accordingly, in the absence of sufficient factual allegations of the requisite intent, dismissal of this claim is proper. *See Washington*, 1993 WL 55948, at * 2.

### B. Plaintiff's Claim based on Negligence – Ninth Claim

The Wal-Mart Defendants contend Plaintiff's negligence claim is subject to dismissal as Plaintiff's allegations identify no legal duty and support no legal duty or causation. As the Court finds the factual allegations are insufficient to support causation, it need not decide whether any duty exists in the first instance. *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 620 (10th Cir. 1998) (where court determined there was a failure of causation as a matter of law, it need not discuss whether defendants owed plaintiffs a duty of care) (applying Oklahoma law).

In order to establish negligence, Plaintiff "'must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury.'" *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1074 (Colo. 2010), *as modified* (Dec. 13, 2010) (citing *HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 888 (Colo. 2002)). "While causation generally is a question of fact for a jury, a court may decide the issue as a matter of law where the alleged chain of causation is too attenuated to impose liability." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1170 (D. Colo. 2001) (citing *Largo Corp. v. Crespin*, 727 P.2d 1098, 1103 (Colo. 1986), *Smith v. State Compensation Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)). *See also Bristol Co., LP v. Osman*, 190 P.3d 752, 758 (Colo. App. 2007) (affirming trial court's conclusion that complaint failed, as a matter of

law, to allege facts which, if true, could establish causation); *accord Gaines-Tabb,* 160 F.3d at 620 (applying Oklahoma law).

An act is the proximate cause of an injury if "the injury would not have occurred but for the defendant's negligent conduct.'" *Mathison v. U.S.*, 619 F. App'x 691, 693 (10th Cir. 2015) (unpublished) (quoting *Kaiser Health Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987)). "But for" causation is shown where "'the negligent conduct in a natural and continued sequence, unbroken by any efficient, intervening cause, produces the result complained of, and without which the result would not have occurred.'" *Mathison*, 619 F. App'x at 693-4 (quoting *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011)). Thus, proximate cause requires "foreseeability" – that it is foreseeable defendant's negligence "will result in injuries" and that the negligence was a "substantial factor in causing the injuries sustained." *Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011) (quotation marks and citation omitted); *see also North Colo. Med. Center v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996). "If an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor." *Phillips v. Lucky Gunner, LLC,* 84 F. Supp. 3d 1216, 1228 (D. Colo. 2015) (citing *North Colo. Med. Center,* 914 P.2d at 908).

Here, Plaintiff alleges the Wal-Mart Defendants negligently identified Mr. Bondo as a shoplifting suspect, upon which Officer Moeller relied. Plaintiff further alleges Officer Moeller's reliance was the "actual and proximate cause of his traffic stop, detention, use of excessive force while making the arrest, shooting and killing" of Mr. Bondo. Between the allegations of

10

negligent misidentification and proximate cause, however, lies a host of other allegations which show a lack of proximate cause.

Assuming the truth of Plaintiff's factual allegations, the Wal-Mart Defendants negligently identified Mr. Bondo as a shoplifting suspect, authorized Officer Moeller to stop and give notice to Mr. Bondo that he was no longer welcomed at Wal-Mart, and the Officers stopped Mr. Bondo to do so. The Officers stopped Mr. Bondo without incident. It was after the Officers learned Mr. Bondo was driving a stolen car that the Officers decided to arrest Mr. Bondo. Mr. Bondo, however, resisted arrest. Mr. Bondo refused to comply with Officer Moeller's order(s) to step out of the car; instead, he locked his car door, put the car into gear, and attempted to flee in the vehicle. It was while Mr. Bondo was attempting to flee that Officer Moeller shot at the vehicle multiple times. Three of these gunshots hit Mr. Bondo, resulting in his death. According to Plaintiff's allegations, Officer Moeller was not properly trained, and his use of deadly force was not authorized and excessive in light of the facts and circumstances.

Even viewed in a light most favorable to Plaintiff, such allegations are insufficient to plausibly suggest the shooting and killing of Mr. Bondo was proximately caused by the Wal-Mart Defendants' alleged negligence in misidentifying Mr. Bondo as a shoplifter. The alleged misidentification was neither the "but for" causation nor the "substantial factor" in causing Mr. Bondo's injuries. Instead, Officer Moeller allegedly inflicted Mr. Bondo's injuries, but only after discovering Mr. Bondo was in a stolen vehicle, after Mr. Bondo resisted arrest, and after Mr. Bondo attempted to flee in the stolen vehicle. As a matter of law, Plaintiff fails to allege the Wal-Mart Defendants' conduct was the legal cause of Mr. Bondo's death. *See Phillips, supra*

(finding, as a matter of law, alleged chain of causation between defendants' (sellers of ammunition and tear gas grenades) and Holmes' (Aurora theater shooter who used some of the materials sold by defendants) acts too attenuated to impose liability for negligence); *Castaldo*, 192 F. Supp. 2d at 1170-71 (finding, as a matter of law, school defendants' conduct were not legal cause of plaintiffs' injuries; Columbine High School shooters' actions were the predominant, if not sole, cause of such injuries); *Abraham v. Raso*, 183 F.3d 279, 296 (3rd Cir. 1999) (affirming summary judgment in favor of Macy's for lack of proximate cause where its employee followed shoplifting suspects out of store into parking lot, and, there, one of the suspects was shot and killed by mall security who had been called by Macy's for back-up assistance).

### C. Plaintiff's Claim for Wrongful Death – Sixth Claim

As Plaintiff's allegations are insufficient to support recovery by Mr. Bondo from the Wal-Mart Defendants, Plaintiff also cannot recover. Under the wrongful death statute, "[w]hen the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured." C.R.S. § 13-21-202. "[T]he right of…heirs to collect damages in a wrongful death case does not arise from a separate tort, but instead is wholly derivative of the injury to the decedent." *Steedle v. Sereff*, 167 P.3d 135, 140 (Colo. 2007). As discussed above, under Plaintiff's factual allegations, Mr. Bondo cannot maintain this action against the Wal-Mart Defendants; therefore, Plaintiff cannot as well.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That the Wal-Mart Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED** and Defendants Wal-Mart Stores, Inc., Melissa Young, and Seth Shelton are **DISMISSED WITH PREJUDICE**; and

(2) That the Wal-Mart Defendants' Motion for Summary Judgment (ECF No. 70) is **DENIED AS MOOT**.

DATED this 29th day of March, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge